29 F.3d 630
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
Anthony Deneen BEST, Plaintiff-Appellant,
v.
Samuel A. LEWIS, Director, et al., Defendants-Appellees.
 No. 93-16744.
 United States Court of Appeals, Ninth Circuit.
 Submitted June 21, 1994.*
Decided June 30, 1994.
 
 Before: TANG, PREGERSON, and T.G. NELSON, Circuit Judges.
 
 
 1
 MEMORANDUM**
 
 
 2
 Anthony Deneen Best, an Arizona state prisoner, appeals pro se the district court's order granting the defendants' motion for summary judgment in his 42 U.S.C. Sec. 1983 action. We have jurisdiction under 28 U.S.C. Sec. 1291. We review de novo, McGuckin v. Smith, 974 F.2d 1050, 1059 (9th Cir.1992), and affirm.
 
 Background
 
 3
 Prior to entering the Arizona Department of Corrections on May 14, 1992, Best had a twenty-five year history of kidney stones. According to Best, he informed a physician's assistant at the Alhambra Reception Center that he had allergies to Morphine and Toradol. On May 26, 1992, Best was transferred to the Cimarron Unit in Tucson.
 
 
 4
 On July 6, 1992, Best complained of passing blood in his urine and pain on his left side. Best received an injection of Toradol for his pain. Dr. White examined Best the next day, but did not observe any negative reaction to the Toradol injection. When Best informed Dr. White that he had passed a kidney stone two days earlier, Dr. White discontinued Best's blood pressure medication because it can aggravate stone formation.
 
 
 5
 On July 29, 1992, Dr. Lutz examined Best for complaints of ulcers. Dr. Lutz prescribed Tagamet for the ulcer complaint and ordered a pelvic x-ray (IVP). On August 5, 1992, Dr. Theodore Smith examined Best for complaints of passing kidney stones. On August 13, 1992, an x-ray of Best's abdomen revealed a kidney stone. On August 24, 1992, Best complained again that he was in pain from passing kidney stones. On August 26, 1992, Dr. Smith examined Best again, referred him to a private urologist and prescribed Toradol. On August 27, 1992, Best reported to the medical unit complaining of pain and vomiting. Best stated that he was allergic to Toradol. Dr. Smith then prescribed Tylenol with codeine and an injection of Phenergan.[1] On August 28, 1992, Ted Jolley, the prison health administrator, responded to a grievance filed by Best on August 19, 1992, complaining about his medical treatment. Mr. Jolley advised Best to consult the nurse at sick call.
 
 
 6
 Dr. White examined Best for his problem on September 3, 1992, at which time the pain had dissipated. Dr. White prescribed Demerol for Best at a dosage of 50 mgs. On September 9, 1992, an IVP showed two kidney stones. On September 11, 1992, Dr. Lutz examined Best to follow up on his complaints of kidney stones. Best told Dr. Lutz that he had passed the stones. On October 6, 1992, a private urologist, Dr. Steven Steinberg, examined Best and determined that Best had passed a kidney stone. Dr. Steinberg advised Best to take pain killers and intravenous fluids if the condition recurred.
 
 
 7
 On October 23, 1992, Best requested medical treatment because he was bleeding and in great pain. According to Best, the correctional officer told Best he could go to sick call or go to the law library. Best chose to go to the law library because his pain was decreasing. However, that night, Best asked to see medical staff when the pain and blood returned. The medical staff told Best that he did not need help. When Best returned to his unit, he was given a disciplinary report for lying about his medical needs. Best was eventually found not guilty of this infraction and it was removed from his record.
 
 
 8
 On October 28, 1992, Dr. Lutz received a grievance from Best, in which Best requested assistance in obtaining a current x-ray for his kidney stone problem. On November 23, 1992, Dr. Lutz responded after reviewing Best's medical records for the last six months. Dr. Lutz noted that on October 6, 1992, Best's urologist indicated that Best had passed a stone and that a October 21, 1992 x-ray confirmed this diagnosis.
 
 
 9
 On December 12, 1992, Best filed his complaint naming the following defendants: Samuel Lewis, Director of the Arizona Department of Corrections; Dr. Thomas Lutz, Chief Medical Officer of the Arizona Department of Corrections; Dr. Robert White, Chief Medical Officer for the Arizona State Prison at Tucson, Cimarron Unit; Ted Jolley, Facility Health Administrator for the Arizona State Prison at Tucson, and other prison officials.[2]
 
 Summary Judgment
 
 10
 Best contends that the district court erred in granting summary judgment for the defendants because he has provided evidence of the defendants' deliberate indifference to his serious medical needs. This contention lacks merit.
 
 
 11
 The plain language of Fed.R.Civ.P. 56(c) mandates that the moving party is entitled to judgment as a matter of law when the nonmoving party has failed to make a sufficient showing on an essential element of the case with respect to which the nonmoving party has the burden of proof. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). There is no genuine issue for trial where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). The responding party "may not rest upon the mere allegations or denials of [his] pleading, but ... by affidavits ... must set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e). "A summary judgment motion cannot be defeated by relying solely on conclusory allegations unsupported by factual data." Taylor v. List, 880 F.2d 1040, 1045 (9th Cir.1989) (citation omitted); see Conner v. Sakai, 15 F.3d 1463, 1467 (9th Cir.1994), petition for cert. filed, 62 U.S.L.W. 3827 (U.S. May 26, 1994) (No. 93-1911).
 
 
 12
 In order to prevail on an Eighth Amendment claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs. Estelle v. Gamble, 429 U.S. 97, 106 (1976); McGuckin, at 1059. A prison official may be held liable under the Eighth Amendment for acting with deliberate indifference to inmate health or safety only if he or she knows that the inmate faces a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it. Farmer v. Brennan, 62 U.S.L.W. 4448, 4452 (U.S. June 7, 1994). Deliberate indifference may be manifested in two ways: either when prison officials deny, delay or intentionally interfere with medical treatment, or by the way in which prison physicians provide medical care. McGuckin, 974 F.2d at 1059. To determine deliberate indifference, the court must focus on the seriousness of the prisoner's medical need and the nature of the defendant's response to that need. Id. A defendant must purposefully ignore or fail to respond to a prisoner's pain or possible medical need in order to establish deliberate indifference. Id. at 1060; see also Farmer, 62 U.S.L.W. at 4449 (prison official must both know of and disregard an excessive risk to inmate health or safety). Mere differences of medical opinion between physicians is insufficient to establish deliberate indifference. Sanchez v. Vild, 891 F.2d 240, 242 (9th Cir.1989).
 
 
 13
 Here, Best contends that the defendants were deliberately indifferent to his serious medical needs because they failed to provide adequate treatment or pain medication for his recurring kidney stones. Specifically, Best argues that the defendants should have provided him with an intravenous saline solution to push out the kidney stones and Demerol for his pain. In addition, Best contends that the defendants exhibited deliberate indifference by giving him Toradol for his pain, when they knew that Best was allergic to this medication.
 
 
 14
 It is undisputed that Best's medical needs were serious. See McGuckin, 974 F.2d at 1059. Best had a long history of recurring kidney stones before he entered the Arizona Department of Corrections. Best's condition was one which a reasonable doctor would find important and worthy of comment or treatment. See id. at 1059-60. However, Best has failed to raise a genuine issue of material fact concerning the nature of the defendants' responses to his serious medical needs. See id.
 
 
 15
 With respect to his kidney stones, Best has failed to show that the defendants provided inadequate treatment. See id. Prison physicians examined Best on numerous occasions for his complaints of kidney stones. They provided pain medication and treatment, ordered diagnostic tests, and referred Best to a urologist. Best's main complaint is that the defendants refused to give him an intravenous saline solution. Best has provided medical records from the University of Arizona and the Kino Community Hospital which show that prior to his incarceration, he had received an intravenous saline solution. However, this evidence does not assist Best in defeating summary judgment because mere differences of opinion are insufficient to establish deliberate indifference. See Sanchez, 891 F.2d at 242.[3] Best cannot show deliberate indifference merely by showing that he did not receive the medical treatment he would have liked.
 
 
 16
 Likewise, Best has not shown that the defendants were deliberately indifferent to his pain, because they prescribed other pain medication instead of Demerol. Best's pre-incarceration medical records show that he received Demerol in the past for his pain. At most, Best has raised a difference of medical opinion regarding the appropriate pain medication. See id.
 
 
 17
 In addition, Best has failed to offer any evidence to support his claim that the defendants purposefully prescribed Toradol, knowing that Best was allergic to this medication. The medical records show that Best first received Toradol at the prison on July 6, 1992. The next day, Best said that "Toradol makes me sick" and that Demerol is the only medication that works. Dr. White, however, examined Best and did not note any adverse reactions from Toradol. On August 26, 1992, Dr. Smith (a nondefendant), prescribed Toradol for Best when he complained of pain from passing kidney stones. The next day, when Best complained that Toradol made him sick and dizzy, Dr. White prescribed Tylenol with codeine and Phenergan. At most, the record shows that Dr. Smith may have been negligent in prescribing Toradol the second time after Best had complained once of his allergies to this medication. However, mere negligence does not violate a prisoner's Eighth Amendment rights. See Farmer, 62 U.S.L.W. at 4448; McGuckin, 974 F.2d at 1059. Moreover, Best has not established a causal link between any named defendant and the purported constitutional violation. See Conner, 15 F.3d at 1469. Although Best claims that upon his arrival at the Arizona Department of Corrections, a physician's assistant noted Best's allergy to Toradol on the front of his medical records, Best has not provided any evidence to support this claim. See id. at 1467.
 
 
 18
 In summary, although Best had serious medical needs, he has not shown that the defendants' responses to those needs amounted to deliberate indifference. See McGuckin, 974 F.2d at 1059-60. Accordingly, the district court properly granted summary judgment for the defendants because Best has failed to raise a genuine issue of material fact. See id. at 1062.
 
 Discovery
 
 19
 Best contends that the district court erred in granting summary judgment for the defendants without ruling on Best's outstanding discovery requests. This contention lacks merit.
 
 
 20
 We review for abuse of discretion a district court's decision not to permit further discovery under Fed.R.Civ.P. 56(f) (court may continue motion for summary judgment to allow additional discovery by party opposing summary judgment). Liberty Lake Inv., Inc. v. Magnuson, 12 F.3d 155, 160 (9th Cir.1993). The district court abuses its discretion if the movant diligently pursued his previous discovery opportunities, and if the movant can show how allowing additional discovery would have precluded summary judgment. California Union Ins. v. American Diversified Savings Bank, 914 F.2d 1271, 1278 (9th Cir.1990), cert. denied, 489 U.S. 1088 (1991). The district court's decision on the Rule 56(f) request need not be explicitly stated. See Columbia Pictures Indus. v. Professional Real Estate Investors, Inc., 944 F.2d 1525, 1532-33 (9th Cir.1991), aff'd, 113 S.Ct. 1920 (1993).
 
 
 21
 Here, Best filed a motion to strike portions of the defendants' motion for summary judgment or in the alternative order the defendants to comply with a prior discovery order. This motion was sufficient to raise the issue of whether Best should be permitted additional discovery, even though Best did not formally denominate it as a Rule 56(f) request. See Garrett v. City and County of San Francisco, 818 F.2d 1515, 1518 (9th Cir.1987). In this motion, Best claimed that the defendants had not complied with an earlier court order to produce Best's medical records. In addition, Best argued that the defendants had not responded to his later discovery requests including further document production requests, interrogatories, and requests for admission.
 
 
 22
 With the exception of the discovery request for his medical records, Best has not even attempted to show how this additional discovery would have precluded summary judgment. See California Union Ins., 914 F.2d at 1278. Thus, the district court did not abuse its discretion in implicitly denying these portions of Best's Rule 56(f) motion by granting summary judgment for the defendants. See Columbia Pictures Indus., 944 F.2d at 1532-33.
 
 
 23
 Best's motion to compel production of his entire medical record presents a closer issue. Best contends that the defendants produced an incomplete copy of his medical record in filing their motion for summary judgment. Specifically, Best contends that 150 pages are missing from his medical record. Best has produced 105 of the 150 pages that he contends are missing from his record. Thus, Best's motion concerns 45 missing pages.
 
 
 24
 Assuming the truth of Best's allegations, Best has not shown how this missing information would have precluded summary judgment. See California Union Ins., 914 F.2d at 1278. The missing information concerns Best's pre-incarceration medical records. At most, this information would show a difference of opinion between the physicians who provided treatment to Best prior to incarceration and the defendants. Since a mere difference of medical opinion is insufficient to establish deliberate indifference, this information would not preclude summary judgment. See Sanchez, 891 F.2d at 242. Accordingly, the district court did not abuse its discretion in denying Best's requests for additional discovery, before granting summary judgment for the defendants. See Liberty Lake Inv., Inc., 12 F.3d at 160.
 
 
 25
 AFFIRMED.
 
 
 
 *
 The panel unanimously finds this case suitable for decision without oral argument. Fed.R.App.P. 34(a); 9th Cir.R. 34-4. Accordingly, Best's request for oral argument is denied
 
 
 **
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3
 
 
 [1]
 At the time, Phenergan was unavailable, so Best only received the Tylenol with codeine
 
 
 [2]
 Although Best originally named other defendants, these four defendants were the only defendants who were served with the summons and the complaint
 
 
 [3]
 Moreover, Best's pre-incarceration medical records do not necessarily show a difference of medical opinion. For example, the Kino Community Hospital records, dated July 10-12, 1987, indicate that Best failed to pass a kidney stone even when he received the intravenous saline solution