53 F.3d 337
NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
 Patrick Louis BYRD, Plaintiff-Appellant,
v.
Glen PARIN, Defendant,
and
Wayne D. WILSON, Ltn.; Judy Severson, Sgt., William B.
Bassett, Programs Officer, Mohave Unit,
Defendants-Appellees.
 No. 94-16022.
 United States Court of Appeals, Ninth Circuit.
 Submitted April 19, 1995.*
Decided April 26, 1995.
 
 Before: BROWNING, SNEED, and T.G. NELSON, Circuit Judges.
 
 
 1
 MEMORANDUM**
 
 
 2
 Patrick Byrd filed a Sec. 1983 complaint alleging that the defendants violated his due process rights by bringing disciplinary actions without sufficient evidence and by placing him in isolated confinement. We affirm the district court's order granting summary judgment for the defendants.
 
 
 3
 * Byrd is a prisoner housed in the Mohave Unit of the Arizona State Prison. In November 1991 prison officials discovered an anonymous inmate letter threatening harm to Byrd because he was "running a store, a gambling house, and extorting money from people." They searched Byrd's living area and found that Byrd was stockpiling commissary items. They also found a list of items that other inmates owed Byrd. Byrd was charged with a "Group II, No. 7" violation for selling protection.[1] Byrd was transferred to the Cochise Detention Center and was placed in isolated confinement pending resolution of the disciplinary charge.
 
 
 4
 At Byrd's hearing, prison officials presented evidence that Byrd possessed the commissary store items and the debt list. They did not present the anonymous inmate letter. CSO Rodriguez, however, testified that Byrd was receiving items of value in exchange for legal services. The prison officials had given Byrd prior notice of the charges and all the evidence except Rodriguez's testimony. The Disciplinary Committee found Byrd guilty of the Group II, No. 7 violation for "receiving any goods in return for other services or consideration." The Classification Committee then recommended transferring Byrd to the ADOC's Florence facility.
 
 
 5
 Byrd appealed the guilty finding, arguing insufficient notice of Rodriguez's testimony. The Appeals Committee vacated the guilty finding and ordered a rehearing. The Committee concluded that Byrd had not received proper notice and that the evidence was insufficient to support a Group II, No. 7 charge. The prison officials retried the case, but this time Byrd was acquitted. The Classification Committee then decreased Byrd's classification score to its original level. The Committee maintained its prior recommendation that Byrd be transferred to another facility based on the anonymous threat and his admission of running a store.
 
 
 6
 Byrd remained in isolated confinement during these events. On January 17, Byrd wrote to deputy Warden Parin requesting that he be released from isolated confinement. By February 7, 1992, Byrd had not been transferred to Florence facility because of a lengthy waiting list. The Classification Committee alternatively recommended that Byrd be transferred to ADOC's Tucson facility. Byrd was never transferred due to delays at the Tuscon facility. On February 17, 1992, Byrd again wrote to Deputy Warden Parin requesting that he be released from isolated confinement. On February 25, 1992, Byrd was returned to the Mohave Unit after waiving a protective segregation placement.
 
 
 7
 Byrd filed this Sec. 1983 civil rights complaint against the defendants. The district court granted the defendants' motion for summary judgment. Byrd appeals.
 
 II
 
 8
 We have jurisdiction pursuant to 28 U.S.C. Sec. 1291. We review the district court's grant of summary judgment de novo. Jones v. Union Pac. R.R. Co., 968 F.2d 937, 940 (9th Cir.1992). Viewing the evidence in the light most favorable to Byrd, we determine whether there are any genuine issues of material fact and whether the district court correctly applied the relevant substantive law. Id.
 
 
 9
 * Byrd alleges that the defendants violated his due process rights because there was not sufficient evidence to charge him with a Group II, No. 7 disciplinary violation. Specifically, he claims that the charge was improperly brought because "[o]ther than the anonymous inmate letter, Defendants had no evidence of [Byrd] running a gambling house or extorting money from people."
 
 
 10
 In analyzing a procedural due process claim, we first determine whether Byrd has been deprived of a liberty interest. Conner v. Sakai, 994 F.2d 1408 (9th Cir.1993). If Byrd has been deprived of a liberty interest, we then determine whether "the procedures attendant upon that deprivation were constitutionally sufficient." Walker v. Sumner, 14 F.2d 1415, 1419 (9th Cir.1994) (citations omitted). When determining whether the process was sufficient, we apply the requirements of Wolff v. McDonnell, 418 U.S. 539 (1974). See Walker, 14 F.3d at 1420 (citing list of Wolff requirements).
 
 
 11
 We need not determine whether Byrd has been deprived of a liberty interest[2] because the defendants satisfied Wolff 's procedural requirements. Byrd was given notice of the charges and the evidence. Although Byrd was not given notice of Rodriguez's testimony, the violation was corrected on appeal. Byrd was given more than twenty-four hours to prepare for his hearing. The Disciplinary Committee stated in writing the reasons for its initial disciplinary decision. Finally, Bird was given the opportunity to call his own witnesses. Thus, even if the defendants arbitrarily filed this disciplinary charge against Byrd, he cannot recover under Sec. 1983. Freeman v. Rideout, 808 F.2d at 951-52 (allegation that filing a false disciplinary charge against an inmate is not actionable under Sec. 1983 where procedural due process protections are provided); Hanrahan v. Lane, 747 F.2d 1137, 1141 (7th Cir.1984) (same).
 
 B
 
 12
 Byrd contends that the defendants violated his due process rights by arbitrarily placing him in isolated confinement. Arizona's prison regulations create a liberty interest if the regulations establish specific rules that are mandatory. Walker, 14 F.3d at 1419. Arizona's Department of Corrections policy 302.14 permits temporary placement in isolated confinement under six circumstances: 1) "5.1.1 Pending completion of an investigation;" 2) "5.1.2 Pending determination of eligibility for protective segregation;" 3) "5.1.3 Pending transfer to a higher custody level;" 4) "5.1.4 Pending revocation of parole, work furlough, home arrest, or temporary, mandatory or provisional release;" 5) "5.1.5 To ensure the safe, secure and orderly operation of a prison facility; and/or" 6) "5.1.6 To fulfill a disciplinary obligation." Further, policy 302.14, section 6.2.1 provides that "Wardens and Deputy Wardens shall make detention placements in accordance with the guidelines set forth in sections 5.1.1 through 5.1.5." (empahsis added). Thus, we conclude that Arizona's prison regulations create a liberty interest in remaining free from arbitrary placement into disciplinary segregation.
 
 
 13
 Although Byrd has a liberty interest, the defendants have not deprived him of that interest. Byrd's confinement never violated Arizona's Department of Corrections policies.[3] His confinement from November 19 through November 27 was permissible under either Sec. 5.1.1 (pending completion of an investigation) or Sec. 5.1.5 (protecting Byrd and ensuring the safe operation of the prison). His confinement from November 27 through February 25 was permissible under Sec. 5.1.3 (pending transfer to a higher custody level).
 
 
 14
 AFFIRMED.
 
 
 
 *
 The panel unanimously finds this case suitable for decision without oral argument. Fed.R.App.P. 34(a); 9th Cir.R. 34-4
 
 
 **
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3
 
 
 [1]
 A group II No. 7 violation is defined as "[r]equesting, demanding, inducing, giving or receiving any goods, property, personal service, favor, gift or any item of value in return for protection or other services or consideration."
 
 
 [2]
 Some circuits have held that a prisoner's allegations of false disciplinary charges, without depravation of a protected liberty interest, do not state a constitutional claim. Sprouse v. Babcock, 870 F.2d 450, 452 (8th Cir.1989); Freeman v. Rideout, 808 F.2d 949, 951 (2nd Cir.1986)
 
 
 [3]
 The defendants also afforded Byrd sufficient process. In over three months, Byrd received seven notifications and reviews of his detention status. On November 19, 1991, Byrd was informed he was being placed into detention "pending disciplinary [action] for gambling, running a store and extortion." On November 25, 1991, he had a preliminary disciplinary hearing. On December 4, he had a classification hearing. On January 2, 1992, he had an administrative reversal of his disciplinary conviction. On January 15, he had a disciplinary rehearing and acquittal. And on February 7, he had a second classification rehearing. Finally, Byrd also met or corresponded with Deputy Warden Parin on at least four separate occasions regarding his status