62 F.3d 1419
 NOTICE: Seventh Circuit Rule 53(b)(2) states unpublished orders shall not be cited or used as precedent except to support a claim of res judicata, collateral estoppel or law of the case in any federal court within the circuit.
Debra CHRISTIE, Plaintiff-Appellant,
v.
Gary BARRINGTON, Lt. Schmoll, and Mary Schwan, Defendants-Appellees.
 No. 94-1653.
 United States Court of Appeals, Seventh Circuit.
 Submitted July 13, 1995.*
Decided July 13, 1995.
 
 Before FLAUM, RIPPLE, and KANNE, Circuit Judges.
 
 ORDER
 
 1
 Debra Christie, while a Wisconsin prisoner, brought a pro se action under 42 U.S.C. Sec. 1983 against several officials[1] at the Outagamie County Jail in Appleton, Wisconsin. Christie alleged (1) that the defendants violated her constitutional right to due process by placing her in segregation without any notice or hearing, and (2) that the defendants violated her constitutional right to access to the courts by placing her in segregation and not allowing her access to the jail's law library and legal materials. The district court denied Christie's request for leave to proceed in forma pauperis. This timely appeal follows.
 
 
 2
 In its order denying Christie's petition, the district court ordered that "petitioner's request to proceed in forma pauperis is DENIED and DISMISSED without prejudice." (R.1.) However, there was no separate Fed. R. Civ. P. 58 judgment and the district court never explicitly stated that Christie's complaint (as opposed to her petition) was dismissed. Nonetheless, where it is readily apparent that the district court's judgment constitutes a final dismissal of the complaint, an appeal may nonetheless be appropriate. See Otis v. City of Chicago, 29 F.3d 1159, 1165 (7th Cir. 1994). In its order denying Christie's petition to proceed in forma pauperis, the district court stated:
 
 
 3
 Based on petitioner's allegations in her complaint, the Court states with certainty that petitioner is unable to make any rational argument in law or fact to support her claim for relief. Nietzke, et.al. v. Williams, 490 U.S. 319 (1989); Williams v. Faulkner, 837 F. 2d 304 (7th Cir. 1988). Therefore, petitioner's request to proceed in forma pauperis must be denied and dismissed without prejudice. See Brekke v. Morrow, 84 F. 2d 4 (7th Cir. 1988).
 
 
 4
 (R.1.) From this language, it is clear that the district court intended not only to deny Christie's petition to proceed in forma pauperis but also to dismiss the complaint.[2] Accordingly, we will proceed with a review of the merits.
 
 
 5
 On appeal, Christie maintains that the district court erred in denying her petition to proceed in forma pauperis as well as denying her requested relief regarding her claim that the appellees placed her on segregation in violation of her constitutional right to due process.[3] A district court's denial of a petition to proceed in forma pauperis and dismissal under 28 U.S.C. Sec. 1915(d) is reviewed for an abuse of discretion and will be affirmed where the complaint is frivolous, i.e., when it lacks an arguable basis either in law or in fact. Talley v. Lane, 13 F.3d 1031, 1033 (7th Cir. 1994) (citing Denton v. Hernandez, 112 S. Ct. 1728 (1992); Neitzke v. Williams, 490 U.S. 319, 325 (1989)). "In determining whether a district court abused its discretion, the court of appeals may consider whether the plaintiff was proceeding pro se; whether the court inappropriately resolved genuine issues of disputed fact; whether the court applied erroneous legal conclusions; whether the court provided a statement of reasons explaining the dismissal; and whether the dismissal was with or without prejudice." Alston v. DeBruyn, 13 F.3d 1036, 1039 (7th Cir. 1994) (citing Denton v. Hernandez, 112 S. Ct. 1728, 1734 (1992)).
 
 
 6
 Christie maintains that she was placed in punitive temporary lockup in violation of her right to procedural due process. Where a petitioner bring suit under Sec. 1983 for a violation of procedural due process, the petitioner must demonstrate that she suffered a deprivation by state action of a constitutionally protected interest in "life, liberty, or property" without due process of law. Zinermon v. Burch, 494 U.S. 113, 125 (1990) (citing Parratt v. Taylor, 451 U.S. 527, 537 (1981); Carey v. Piphus, 435 U.S. 247, 259 (1978)). In Hewitt v. Helms, 459 U.S. 460 (1983), the United States Supreme Court held that these constitutionally protected liberty interests arise from two sources -- "the Due Process clause itself and the laws of the States." Id. at 466. Since Christie does not have a protected liberty interest arising from either the Due Process Clause itself or from the laws of Wisconsin, her complaint was properly dismissed.
 
 
 7
 Our review of Christie's claim begins with a recent United States Supreme Court decision, Sandin v. Conner, 1995 WL 360217 (June 19, 1995). In Sandin, an inmate (Conner) argued that he had been placed on disciplinary segregation for thirty days in violation of his constitutional right to procedural due process. Holding that Conner had no liberty interest in being free from punitive segregation, the district court dismissed his complaint. However, the Ninth Circuit reversed the district court's dismissal, Conner v. Sakai, 15 F.3d 1463 (9th Cir. 1993), holding that Conner did have a liberty interest in remaining free from disciplinary segregation. The Ninth Circuit based its finding on language in a prison regulation which required that the prison committee find guilt (and thereby impose the disciplinary segregation) only if there was substantial evidence of misconduct. The Supreme Court reversed the Ninth Circuit, finding that Corner had neither a state created liberty interest, nor a liberty interest arising from the Due Process Clause itself.
 
 
 8
 The Supreme Court first held that Conner had no liberty interest arising from the Due Process Clause. In so holding, the Court stated:
 
 
 9
 Admittedly, prisoners do not shed all constitutional rights at the prison gate, Wolff, 418 U.S., at 555, but "'[l]awful incarceration brings about the necessary withdrawal or limitation of many privileges and rights, a retraction justified by the considerations underlying our penal system."' Jones, 433 U.S., at 125, quoting Price v. Johnston, 334 U.S. 266, 285 (1948). Discipline by prison officials in response to a wide range of misconduct falls within the expected parameters of the sentence imposed by a court of law.
 
 
 10
 Sandin, 1995 WL 360217, slip op. at * 7.
 
 
 11
 The Supreme Court then determined that there was no state created liberty interest. The Court stated that in finding a state created liberty interest, the Ninth Circuit erred in relying solely on the language of the regulation which allegedly created this liberty interest. To this point, the Supreme Court held that the approach taken in Hewitt v. Helms, 459 U.S. 460 (1983), which was followed by the Ninth Circuit, was flawed:
 
 
 12
 Instead of looking to whether the State created an interest of "real substance" comparable to the good time credit scheme of Wolff, the Court asked whether the State had gone beyond issuing mere procedural guidelines and had used "language of an unmistakenly mandatory character" such that the incursion on liberty would not occur "absent specified substantive predicates." Finding such mandatory directives in the regulations before it, the Court decided that the State had created a protected liberty interest.
 
 
 13
 Sandin, 1995 WL 360217, slip op. at * 4 (citing Hewitt, 459 U.S. at 471-72).
 
 
 14
 The Supreme Court stated that Hewitt and its progeny improperly shifted the focus of the liberty interest inquiry "to one based on the language of a particular regulation, and not the nature of the deprivation ...." Sandin, 1995 WL 360217, slip op. at * 5. The Supreme Court noted that the Hewitt analysis has produced two undesirable effects: (1) it creates a disincentive for States to codify prison management procedures in the interest of uniform treatment; and (2) it has led to the involvement of the federal courts in the day-to-day management of the prisons. Id. at * 6. Accordingly, the Supreme Court held that regardless of the language of the applicable prison regulation or statute, a liberty interest is created only in limited situations. Specifically, the Supreme Court provided that "these interests will be generally limited to freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force, see, e.g., Vitek, 445 U.S., at 493 (transfer to mental hospital), and Washington, 494 U.S., at 221-222 (involuntary administration of psychotropic drugs), nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." Id.
 
 
 15
 Since "Conner's discipline in segregated confinement did not present the type of atypical, significant deprivation in which a state might conceivably create a liberty interest[,]" the Supreme Court held that Conner had no state created liberty interest. Id. at * 7. The Supreme Court relied upon three factors in making this determination: (1) disciplinary segregation mirrored conditions of other forms of completely discretionary confinement; (2) based on a comparison between inmates inside and outside disciplinary segregation, the state's action in placing him there for 30 days did not significantly disrupt Conner's environment; and (3) the state's action did not affect the duration of Conner's sentence. Id. at 7-8.
 
 
 16
 In the instant action, Christie was subject to the same type of deprivation as Conner - they were both subject to punitive segregation for a similar length of time.[4] Accordingly, Christie has no liberty interest arising solely from the Due Process Clause. Christie argues, however, that Wis. Admin. Code Sec. DOC 303.11 creates a liberty interest in being free from temporary lockup.[5] In Russ v. Young, 895 F.2d 1149 (7th Cir. 1989), we addressed an inmate's claim that Sec. DOC 303.11 created a liberty interest in staying out of temporary lockup. We held that since Sec. DOC 303.11 employed discretionary language, the regulation did not create a liberty interest - it only provided guidance to prison officials in deciding whether temporary lockup was appropriate. Id. at 1154.
 
 
 17
 It is true that the Russ Court relied, in part, upon the Supreme Court's decision in Hewitt which, as discussed above, has been criticized by the Supreme Court's recent decision in Sandin. Nonetheless, Sandin does not invalidate our decision in Russ. The Sandin Court limited Hewitt only to the extent that Hewitt relied solely upon the language of the applicable regulation, without looking to the substance of the deprivation, in finding a state created liberty interest. In limiting Hewitt, the Sandin Court held that it was returning to the due process principles which were established and applied in Wolff v. McDonnell, 418 U.S. 539 (1974) and Meachum v. Fano, 427 U.S. 215 (1976). Both Wolff and Meachum considered, as a preliminary matter, whether the regulation at issue contained language which was mandatory (i.e., language which required that the prison official follow some procedure before the prisoner was deprived under the regulation) or discretionary. In Wolff, the applicable regulation mandated predeprivation procedures - the regulation provided that good time credits awarded to inmates were revocable only if the prisoner was guilty of serious misconduct. Wolff, 418 U.S. at 557. The Wolff Court then found that since the prisoner's interest in being deprived of good time credit had "real substance," the regulation created a liberty interest. Id. In Meachum, however, the applicable regulation did not mandate anything - the regulation provided prison officials with the discretion to effect the transfer of a prisoner to another facility. Meachum, 427 U.S. at 228. Accordingly, the Meachum court found that there was no state created liberty interest.
 
 
 18
 Hence, under Sandin, while the language of a state prison regulation is no longer sufficient to create a liberty interest, mandatory language remains a prerequisite to finding a state created liberty interest. As we found in Russ, the decision to place a prisoner on temporary lockup pursuant to Sec. DOC 303.11 is discretionary and, therefore, Sec. DOC 303.11 does not create a liberty interest. Since Sandin does not disturb our holding in Russ, we find that Christie does not have a state created liberty interest in being free from temporary punitive lockup.
 
 
 19
 For these reasons, the judgment of the district court is AFFIRMED.
 
 
 
 *
 On September 29, 1994, the appellees filed a notice of intent not to file a brief. After preliminary examination of the appellant's brief, the court notified the parties that it had tentatively concluded that oral argument would not be helpful to the court in this case. The notice provided that any party might file a "Statement as to Need of Oral Argument." See Fed. R. App. P. 34(a); Cir. R. 34(f). No such statement having been filed, the appeal is submitted on the appellant's brief and record
 
 
 [1]
 The following officials were named as defendants - Captain Gary Barrington, Jail Administrator; Lieutenant Schmoll, Lieutenant of Corrections; and Mary Schwan, a correctional officer
 
 
 [2]
 Since the class of litigants which file requests to proceed in forma pauperis are virtually always without counsel, a denial of a request for waiver of fees because the complaint is frivolous, without an express dismissal of the complaint, may prejudice the plaintiff - the plaintiff may think that if he can pay the filing fee, he can maintain the action or that he can amend his complaint. Hence, where this uncertainty would otherwise cause the litigant to forfeit his right to appeal through inadvertence, we have held that the order denying the petitioner's request to proceed in forma pauperis is not considered a final and appealable order. Brekke v. Morrow, 840 F.2d 4, 6 (7th Cir. 1988). Since Christie filed a timely appeal from the district court's order and, therefore, has not been prejudiced by the district court's failure to expressly dismiss the complaint, the district court's order may be considered final despite our holding in Brekke
 
 
 [3]
 Christie does not challenge the district court's dismissal of her claim that she was denied access to the jail's law library and legal materials. Accordingly, the merits of this claim will not be reviewed in our disposition of her appeal
 
 
 [4]
 In her complaint, Christie does not indicate how long she was on temporary lockup. However, in her brief, she alleges that she was on temporary lockup for approximately 23 days. Hence, at most, Christie was subject to 23 days of punitive segregation. Conner was subject to 30 days
 
 
 [5]
 She also points to Wis. Admin. Code Secs. DOC 303.08(1) and 303.76 as grounds for her state created liberty interest. However, these provisions are not applicable to temporary lockup under Sec. DOC 303.11