**William LEER; Robert Larry Emerhiser, Plaintiffs–Appellants,**

v.

**Al MURPHY; Darrell Gardner; Arvin Arave, Defendants–Appellees.**

**No. 87–3501.**

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Oct. 7, 1987.

Decided April 4, 1988.

Lance D. Churchill, Churchill & Vander Boegh, Boise, Idaho, for plaintiff-appellant, Robert Larry Emehiser.

Amy S. Howe, Bistline Law Offices, Boise, Idaho, for plaintiffs-appellants.

Kathryn A. Sticklen, Quane, Smith, Howard & Hull, Boise, Idaho, for defendants-appellees.

Before WALLACE, POOLE and O'SCANNLAIN, Circuit Judges.

WALLACE, Circuit Judge:

A fellow prisoner stabbed Emehiser and Leer (inmates) at the Idaho State Correctional Institution (prison). The inmates brought suits in federal district court under 42 U.S.C. § 1983, seeking damages from various state employees in the Idaho Department of Corrections (prison officials) in their official and individual capacities. The inmates alleged that the prison officials' failure in certain aspects of prison administration caused the fellow inmate to stab them and thereby deprived them of their fourteenth amendment right to due process and their eighth amendment right to be free from cruel and unusual punishment. The prison officials were granted summary judgment and the inmates timely appealed. The trial court had jurisdiction pursuant to 28 U.S.C. § 1343, except for the inmates' claims against the prison officials in their official capacities, which it held were barred by the eleventh amendment. We have jurisdiction pursuant to 28 U.S.C. § 1291, and we affirm.

I

On August 28, 1983, Emehiser was standing in line awaiting dinner at the prison. Frank and Levi Martinez (the Martinez brothers) were in line ahead of Emehiser. The Martinez brothers allowed another prisoner to enter the line ahead of Emehiser. Emehiser objected and argued with the Martinez brothers. Challenges ensued, but no fight resulted.

Later that evening, the Martinez brothers went to Emehiser's cell. When he responded to a knock, Emehiser was jerked out of the cell and stabbed. As the Martinez brothers attempted to flee, Emehiser grabbed a crutch and caught and struck one of the brothers.

Leer, who was in an adjacent cell and had heard the commotion arising from the initial assault on Emehiser, intervened in the altercation. While Leer was holding one of the Martinez brothers down, the other stabbed him.

Correctional Officer Tisdale was on duty at the time of both stabbings. He observed the altercation between the inmates and the Martinez brothers. Tisdale went to the scene, assisted the inmates to the unit office, and telephoned for medical and security assistance.

Subsequently, the inmates filed separate actions against the prison officials: Murphy, Director of the Idaho Department of Corrections; Gardner, Warden of the prison; Arave, Deputy Warden and Chief of

Inmate Management of the prison; Wright, Deputy Warden and Chief of Security of the prison; and Tisdale. They sued the prison officials in their official and individual capacities, and alleged that the prison officials deprived them of their fourteenth amendment right to due process and of their eighth amendment right to be free from cruel and unusual punishment. They alleged that the prison officials violated these rights by their negligent, careless, reckless, and knowing:

1. failure to provide an adequate officer to inmate staffing ratio;

2. failure to equip and maintain a proper classification system at the prison;

3. failure to provide prison personnel who were trained in identifying and responding to security problems within the prison facility;

4. failure to make reasonable and periodic inspections of the area where the inmates were assaulted;

5. failure to segregate violent from nonviolent prisoners;

6. failure to control the population level at the prison;

7. failure to protect the inmates from a known pervasive risk of harm within the institution; and,

8. failure to enforce prison security rules.

They alleged that these acts or omissions individually, and taken together, were the proximate cause of their stabbing injuries and their resulting pain and suffering. They sought damages for these violations pursuant to 42 U.S.C. § 1983. The two actions were consolidated in the district court.

After substantial discovery, the parties all filed summary judgment motions. Eventually, the prison officials were granted summary judgment on all claims against the inmates. All parties seek attorneys' fees pursuant to 42 U.S.C. § 1988 for this appeal.

We review the entry of summary judgment de novo. *Darring v. Kincheloe,* 783 F.2d 874, 876 (9th Cir.1986). The same standard that the trial court used under Fed.R.Civ.P. 56(c) governs our review. *Id.*

We must view the evidence in the light most favorable to the nonmoving party to determine whether there are any genuine issues of material fact and whether the district court correctly applied the relevant substantive law. *Ashton v. Cory,* 780 F.2d 816, 818 (9th Cir.1986). The party opposing summary judgment may not rest on conclusory allegations, but must set forth specific facts showing that there is a genuine issue for trial. *Berg v. Kincheloe,* 794 F.2d 457, 459 (9th Cir.1986) (*Berg*).

II

The district court concluded that the eleventh amendment barred the inmates' actions against the prison officials in their official capacities. The eleventh amendment creates a jurisdictional bar to private damages actions against states in federal court. *See Quern v. Jordan,* 440 U.S. 332, 338–40, 99 S.Ct. 1139, 1143–45, 59 L.Ed.2d 358 (1979) (*Quern*). The state need not be a named party defendant for the eleventh amendment to apply. *See Edelman v. Jordan,* 415 U.S. 651, 663, 94 S.Ct. 1347, 1355, 39 L.Ed.2d 662 (1974) (*Edelman*). If the suit requests that the federal court order a state officer to pay funds from the state treasury for his wrongful acts, the eleventh amendment bars the suit because the state is the real party in interest. *See id.* Congress did not intend, in enacting section 1983, to abrogate the eleventh amendment's traditional jurisdictional bar. *Quern,* 440 U.S. at 341–45, 99 S.Ct. at 1145–47.

Relying on *Brandon v. Holt,* 469 U.S. 464, 105 S.Ct. 873, 83 L.Ed.2d 878 (1985) (*Brandon*), the inmates argue that the district court erred when it concluded that the eleventh amendment barred their claims against the prison officials in their official capacities. *Brandon,* however, involved plaintiffs who were seeking to recover damages from a *city* for the acts of a *city* official. *See id.* at 467–68, 105 S.Ct. at 875–76. The Court premised the recovery of damages in part on its decision in *Monell v. New York City Department of Social Services,* 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978), which held that mu-

nicipalities were "persons" within the meaning of section 1983, and that the eleventh amendment did not bar federal courts from holding municipalities liable for damages arising from the conduct of their officials undertaken in their official capacities. 436 U.S. at 690 & n. 54, 98 S.Ct. at 2035 & n. 54. *Monell*, however, expressly limited its holding "to local government units which are not considered part of the State for Eleventh Amendment purposes." *Id.* at 690 n. 54, 98 S.Ct. at 2035 n. 54. *Brandon* is thus applicable to this case only if the Idaho Department of Corrections is not part of the state for purposes of the eleventh amendment. In this determination, the critical factor is the financial nexus between the agency and the state treasury. *See Edelman*, 415 U.S. at 663–65, 94 S.Ct. at 1355–57.

■ We need look no further than Idaho Code § 20–201 (1979) to conclude that the Idaho Department of Corrections is part of the state and that any judgment against the Department or its employees acting in their official capacities would have to be paid out of the state treasury. Section 20–201(3) describes the department of corrections as "an executive department of the state government" under the Idaho Constitution. The Idaho Legislature provides the requisite funds for operating the executive department. Thus, *Brandon* does not help the inmates.

■ The inmates next contend that Idaho waived its sovereign immunity. Waiver of a state's eleventh amendment immunity can be found only when evidenced " 'by the most express language or by such overwhelming implications from the text as [will] leave no room for any other reasonable construction.' " *Edelman*, 415 U.S. at 673, 94 S.Ct. at 1361, *quoting Murray v. Wilson Distilling Co.*, 213 U.S. 151, 171, 29 S.Ct. 458, 464, 53 L.Ed. 742 (1909). The waiver, moreover, must extend explicitly to suits in federal court. *See Montana v. Peretti*, 661 F.2d 756, 758 (9th Cir.1981) (per curiam).

The inmates argue that the Idaho Supreme Court recognized such an explicit waiver in *Sterling v. Bloom*, 111 Idaho 211, 723 P.2d 755 (1986) (*Sterling*). In that case, an injured motorcyclist alleged in state court that the state was liable for negligently supervising the motorist who caused the plaintiff's injury. The individual who struck the plaintiff was on probation for driving while intoxicated. The Idaho Supreme Court analyzed the interplay of the limited waiver of sovereign immunity and the discretionary function exception contained in the Idaho Tort Claims Act, Idaho Code § 6–901 (1979). *Sterling*, 111 Idaho at 226–33, 723 P.2d at 770–77. Interpreting the Act, the court concluded that Idaho had waived its sovereign immunity as to plaintiff's suit. *Id.* at 232, 723 P.2d at 776.

■ The Idaho Supreme Court in *Sterling* did not, however, address the eleventh amendment or Idaho Code § 6–903(f), which expressly retains Idaho's eleventh amendment immunity. In addition, the opinion says nothing about suits against the state in federal court. *Sterling* therefore does not provide the requisite express language to indicate that Idaho has waived its eleventh amendment immunity from suit in federal court. Thus, the district court did not err when it concluded that the eleventh amendment precluded it from asserting jurisdiction over the inmates' claims against the prison officials in their official capacities.

### III

We now examine the inmates' claims against the prison officials in their individual capacities. We focus initially on the inmates' prima facie case under section 1983 for violation of their eighth amendment rights, and then on their fourteenth amendment due process claim.

### A.

■ Section 1983 imposes two essential proof requirements upon a claimant: (1) that a person acting under color of state law committed the conduct at issue, and (2) that the conduct deprived the claimant of some right, privilege, or immunity protected by the Constitution or laws of the Unit-

ed States. *Parratt v. Taylor,* 451 U.S. 527, 535, 101 S.Ct. 1908, 1913, 68 L.Ed.2d 420 (1981), *overruled on other grounds, Daniels v. Williams,* 474 U.S. 327, 328, 106 S.Ct. 662, 663, 88 L.Ed.2d 662 (1986) (*Daniels*); *see Haygood v. Younger,* 769 F.2d 1350, 1354 (9th Cir.1985) (en banc) (*Haygood*), *cert. denied,* —— U.S. ——, 106 S.Ct. 3333, 92 L.Ed.2d 739 (1986). The prison officials have admitted, and we agree, that they were acting under color of state law when they were administering the prison. Thus, this case turns on the second inquiry: whether the prison officials' conduct deprived the inmates of their rights under the eighth amendment.

■ A person deprives another "of a constitutional right, within the meaning of section 1983, if he does an affirmative act, participates in another's affirmative acts, or omits to perform an act which he is legally required to do that *causes* the deprivation of which [the plaintiff complains]." *Johnson v. Duffy,* 588 F.2d 740, 743 (9th Cir.1978) (*Johnson*) (emphasis added). The inquiry into causation must be individualized and focus on the duties and responsibilities of each individual defendant whose acts or omissions are alleged to have caused a constitutional deprivation. *See Rizzo v. Goode,* 423 U.S. 362, 370–71, 375–77, 96 S.Ct. 598, 603–04, 606–07, 46 L.Ed.2d 561 (1976) (*Rizzo*); *Berg,* 794 F.2d at 460; *Williams v. Bennett,* 689 F.2d 1370, 1381 (11th Cir.1982) (*Williams*), *cert. denied,* 464 U.S. 932, 104 S.Ct. 335, 78 L.Ed.2d 305 (1983).

■ A prisoner can state a section 1983 claim against prison personnel under the eighth amendment by establishing that the prison personnel acted with "deliberate indifference" in creating the condition that violates the eighth amendment. *See Berg,* 794 F.2d at 459. The "deliberate indifference" standard requires proving some degree of "individual culpability," but does not require proof of an express intent to punish. *Id., citing Haygood,* 769 F.2d at 1354–55. Thus, to establish a deprivation of their eighth amendment rights by a particular prison official, the inmates in this case must establish the prison official's deliberate indifference to the inmates' need for an environment compatible with " 'the evolving standards of decency that mark the progress of a maturing society.' " *Haygood,* 769 F.2d at 1354, *quoting Trop v. Dulles,* 356 U.S. 86, 101, 78 S.Ct. 590, 598, 2 L.Ed.2d 630 (1958).

■ In analyzing this relationship between deliberate indifference and the constitutional deprivation, we believe it is important to distinguish the causal connection required when a plaintiff seeks injunctive or declaratory relief as opposed to damages. When a prisoner seeks injunctive or declaratory relief against a myriad of prison personnel responsible for operating a prison, we focus on whether the combined acts or omissions of the state officials responsible for operating the state's penal system created living conditions that violate the eighth amendment. *See Williams,* 689 F.2d at 1383. The approach undeniably focuses on the duties and responsibilities of each of the individual defendants whose acts or omissions are alleged to have caused the constitutional deprivation. *Id.* at 1381; *see Rizzo,* 423 U.S. at 370–71, 375–77, 96 S.Ct. at 603–04, 606–07. However, the causal link between the deliberate indifference and the eighth amendment deprivation is broader and more generalized than when that same prisoner seeks damages for the harmful effects of such conditions. *See Williams,* 689 F.2d at 1383–84 (contrasting the "broad and generalized" approach to causation in a suit seeking injunctive relief with the "individualized" inquiry applicable to suits seeking damages from individual prison officials).

When plaintiffs, such as the inmates, seek to hold an individual defendant personally liable for damages, the causation inquiry between the deliberate indifference and the eighth amendment deprivation must be more refined. We must focus on whether the individual defendant was in a position to take steps to avert the stabbing incident, but failed to do so intentionally or with deliberate indifference. In order to resolve this causation issue, we must take a very individualized approach which accounts for the duties, discretion, and means

of each defendant. *See Williams*, 689 F.2d at 1384. Especially when, as in this case, a prisoner seeks to hold a prison employee individually liable because another prisoner attacked him, the prisoner must establish individual fault. *See Berg*, 794 F.2d at 460; *Bogard v. Cook*, 586 F.2d 399, 418 (5th Cir.1978), *cert. denied*, 444 U.S. 883, 100 S.Ct. 173, 62 L.Ed.2d 113 (1979). Sweeping conclusory allegations will not suffice to prevent summary judgment. *See Berg*, 794 F.2d at 460. The prisoner must set forth specific facts as to each individual defendant's deliberate indifference. *See id.* at 460–61 (reversing entry of summary judgment in favor of prison official when inmate had alleged specific facts showing that the official knew of the threat to the inmate's safety, yet failed to take action).

■ The foregoing teaches that in order to prevail and recover damages against any of the named prison officials, the inmates in this case must prove (1) that the specific prison official, in acting or failing to act, was deliberately indifferent to the mandates of the eighth amendment and (2) that this indifference was the actual and proximate cause of the deprivation of the inmates' eighth amendment right to be free from cruel and unusual punishment. *See Zatler v. Wainwright*, 802 F.2d 397, 400–01 (11th Cir.1986); *Williams*, 689 F.2d at 1380–81. Because the inmates must prevail on both issues, we find it unnecessary to analyze whether the individual prison officials were deliberately indifferent to the inmates' rights under the eighth amendment. We conclude that we can affirm the summary judgment because the inmates have failed to allege facts which demonstrate that any particular prison official was the actual and proximate cause of any constitutional violation. *See, e.g., Johnson*, 588 F.2d at 743.

Because the inmates have failed to raise a material issue of fact concerning the requisite causal connection between each individual prison official's actions and the eighth amendment violation, and because there are no facts demonstrating this necessary element of their claim, summary judgment was appropriate.

### B.

The inmates' notice of appeal states that they appeal from the order entered in the district court on November 20, 1986. That order, in addition to other holdings, rejected the inmates' claims that the prison officials deprived them of their right to liberty under the fourteenth amendment's due process clause. The district court relied on *Daniels* and *Davidson v. Cannon*, 474 U.S. 344, 106 S.Ct. 668, 88 L.Ed.2d 677 (1986) (*Davidson*), which held that allegations of a state official's negligence is insufficient to state a claim under the due process clause of the fourteenth amendment. *Davidson*, 474 U.S. at 347–48, 106 S.Ct. at 670–71; *Daniels*, 474 U.S. at 328, 332–33, 106 S.Ct. at 663, 665–66.

■ The inmates have raised their due process claim in their brief on appeal only by stating that they are appealing from the order of November 20, 1986, but their brief contains no argument on the issue. Rule 28(a)(4) of the Federal Rules of Appellate Procedure states that the brief of an appellant must contain "the contentions of the appellant with respect to the issues presented...." Issues raised in a brief which are not supported by argument are deemed abandoned. *United States v. Loya*, 807 F.2d 1483, 1486–87 (9th Cir. 1987). We will only review an issue not properly presented if our failure to do so would result in manifest injustice. *Id.* at 1487. We conclude it will not in this case.

### IV

Both inmates and prison officials request attorneys' fees for this appeal pursuant to 42 U.S.C. § 1988. Section 1988 provides, in part, that "[i]n any action or proceeding to enforce a provision of section[ ] ... 1983 ... the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the cost." Because the inmates have not prevailed, we deny their request for attorneys' fees.

■ Section 1988 allows prevailing defendants in civil rights actions to receive

attorneys' fees where the action brought is found to be unreasonable, frivolous, meritless or vexatious. *Roberts v. Spalding,* 783 F.2d 867, 874 (9th Cir.), *cert. denied,* —— U.S. ——, 107 S.Ct. 399, 93 L.Ed.2d 352 (1986). An appeal is frivolous when the result is obvious or the appellant's arguments of error are wholly without merit. *McConnell v. Critchlow,* 661 F.2d 116, 118 (9th Cir.1981). The results on appeal were not obvious and the inmates' arguments were not wholly without merit. We therefore deny the prison officials' request for attorneys' fees.

AFFIRMED.