83 F.3d 426
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
Vincent Tyrone BAYLIS, Plaintiff-Appellant,
v.
STATE OF ARIZONA; Warden Thomas; Sgt. Conner, a/k/a Sgt.
Conner; CSO Serrano; CSO Dominguez, et al.,
Defendants-Appellees.
 No. 94-17172.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted March 7, 1996.
Decided April 25, 1996.
 
 Before: FLETCHER, NOONAN, and RYMER, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 
 2
 Vincent Tyrone Baylis appeals the district court's grant of summary judgment dismissing his prisoner's § 1983 action, as well as several of the court's nondispositive orders. Baylis alleged that prison officials were deliberately indifferent to the serious risk that he and his cellmate would harm one another. We have jurisdiction, 28 U.S.C. § 1291, and we affirm in part and reverse in part.
 
 
 3
 * On March 3, 1992, Baylis was attacked by his cellmate, Alfonso Belcher. During the struggle that ensued, Belcher bit Baylis' ear so hard stitches were required to reattach his earlobe.
 
 
 4
 In April 1992, Baylis sued Warden Thomas, Lieutenant Rios, and guards Conner, Cramblitt, Domingez, Fletcher, Hernandez, Schlenker, Serrano, Streeper, and Wells. Baylis claimed that before the attack he had asked the defendants to separate him from Belcher, and had warned the defendants that he and Belcher would probably get into a fight because he had previously been involved in a fight with Belcher's first cousin, Gregory Miller. In November 1994, the district court granted the defendants' motion for summary judgment.
 
 II
 
 5
 We review a grant of summary judgment de novo. Warren v. City of Carlsbad, 58 F.3d 439, 441 (9th Cir.1995). Viewing the evidence in the light most favorable to the nonmoving party, we must decide whether there are any genuine issues of material fact and whether the district court correctly applied the relevant substantive law. Id.
 
 III
 
 6
 Prison officials have a duty "to protect prisoners from violence at the hands of other prisoners." Farmer v. Brennan, --- U.S. ----, ----, 114 S.Ct. 1970, 1976 (1994) (citations omitted). However, to establish liability, Baylis must prove that the defendants "kn[ew] of and disregard[ed] an excessive risk to [his] ... safety...." Id. at 1979. Baylis may prove this subjective element of his claim with "circumstantial evidence," including "the very fact that the risk was obvious." Id. at 1981. We conclude Baylis produced sufficient evidence to require trial on whether the nine guards, Lieutenant Rios, and Warden Thomas had knowledge of the risk and yet disregarded it.
 
 
 7
 * Baylis produced five documents indicating that the guards knew of the risk that Belcher and Baylis would hurt each other.
 
 
 8
 In his complaint, Baylis claimed that he "repeatedly asked that [the nine defendant guards] do something to prevent [Belcher and Baylis] from hurting one another and that a cell change was in order...." Complaint of Vincent T. Baylis of Apr. 6, 1992, at 5. A verified complaint based on personal knowledge and setting forth specific, admissible facts may be treated as an affidavit to oppose summary judgment. McElyea v. Babbitt, 833 F.2d 196, 197-98 & n. 1 (9th Cir.1987).
 
 
 9
 In his affidavit, Baylis claimed that he asked eight of the guards "to intervene and separate [Belcher and Baylis] to avoid confrontation and physical harm." Affidavit of Vincent T. Baylis of Apr. 6, 1992, at 1. The defendants claim the affidavit was not part of the record before the district court on summary judgment. We disagree. Although it was not attached to Baylis' Opposition to Summary Judgment, it was readily available to the court and part of the complaint which the court should have considered in ruling on the motion.
 
 
 10
 Baylis furnished an affidavit of inmate Miller, which declared that "[Belcher] and I repeatedly told [prison] staff that we were cousins and that we would like to be in the same cell.... The staff was told ... that [Belcher and Baylis] should not be put in the same cell a bunch of times...." Affidavit of Gregory Miller of Sept. 16, 1992. The defendants objected that the affidavit was vague, and that it was a copy, not the original. Although Miller's allegations referred only to unnamed "staff," one could infer that Miller meant the defendants, given the limited number of guards with whom Miller could have spoken. While the district court had only a copy of Miller's affidavit, it should have allowed Baylis to substitute the original, or have satisfied itself that the original affidavit or Miller himself would be available for trial.
 
 
 11
 Baylis also produced the affidavit of inmate Kerry Love, which declared that Miller and Belcher both told prison staff that "Belcher and Miller was cousins and that the two inmates Belcher and inmate Baylis should not be house[d] in the same cell for the reason that inmate Baylis had a fight with inmate Miller...." Affidavit of Kerry Love of Sept. 8, 1992. The defendants objected to this affidavit as inadmissible hearsay. However, Baylis offered Love's affidavit to prove what Love had overheard, and not to prove the truth of what he had heard, so Love's claims are not hearsay. See Fed.R.Evid. 801(c) advisory committee's note.
 
 
 12
 Finally, Baylis produced a letter he wrote Warden Thomas nine days before the attack, stating that he had asked guard Connor to separate him from Belcher because Baylis and Belcher "didn't get along as Belcher is the cousin to Miller ... [and] Miller and myself had a fight...." Letter from Vincent T. Baylis to Warden Thomas of Feb. 22, 1992.
 
 B
 
 13
 The evidence with respect to Thomas and Rios is more problematic but we ultimately conclude sufficient to withstand summary judgment. Baylis' letter to Thomas nine days before the attack is evidence that Thomas had knowledge. In it, Baylis explained that he wanted to be separated from Belcher, that Belcher disliked him because he had fought with Belcher's cousin, and that a transfer was needed to avoid "physical confrontation." Letter from Baylis to Thomas of Feb. 22. A prison guard initialed the letter on February 23, demonstrating its receipt by prison authorities. Id. While Thomas claimed he did not have this letter on file, Affidavit of James A. Thomas of June 1, 1994, and Baylis acknowledged in his deposition that it was returned to him, Deposition of Vincent T. Baylis of June 24, 1993, at 30-31, issues remain for trial. Whether Warden Thomas had actual knowledge of Baylis' concerns or should have known of them is uncertain. Whether prison policies prevented communication from prisoners to the warden is also uncertain.
 
 C
 
 14
 The failure of the authorities to respond to Baylis' pleas both before and after the attack is evidence of deliberate indifference. In addition to the failure to act prior to the attack, the failure of prison authorities to respond to Baylis' letters to Warden Thomas and Lieutenant Rios three days after the attack is further evidence. In the letters, Baylis discussed the attack, warned Thomas and Rios that another fight was likely, and asked yet again to be separated from Belcher. Letters of Mar. 7, 1992. Nonetheless, the defendants did not separate Baylis from Belcher until March 13, ten days after the attack and six days after the letters were sent. Affidavit of Ronald T. Connor of May 31, 1994, at 3. In addition to the claims of harm from the attack itself, Baylis alleged that the defendants' failure to timely separate him from Belcher caused him "mental harm." Complaint at 7; Baylis' Affidavit at 1-2. Baylis alleged that correctional action was taken only after the FBI intervened.
 
 IV
 
 15
 Baylis also appeals several of the district court's nondispositive interim orders. We find no abuse of discretion.
 
 
 16
 First, Baylis argues that the court improperly refused to accept his amended complaint. However, Baylis failed to file a contemporaneous motion to amend, the district court explained that such a motion was required by Rule 15(a), and Baylis never refiled his amended complaint with an accompanying motion to amend.
 
 
 17
 Second, Baylis argues that the court improperly denied his three motions for preliminary injunctive relief. However, one motion concerned a discovery dispute rendered moot by an intervening order, one failed to allege essential facts (e.g. irreparable harm and probable success on the merits), and the last concerned persons not before the court.
 
 
 18
 Third, Baylis argues that the court improperly refused to sanction the defendants' conduct during discovery. However, Baylis was not entitled to a discovery order from the court before serving the defendants with a discovery request, the court did not improperly interpret Baylis' motion to depose a nonparty as a request for that nonparty's name and address, and the court correctly refused at the summary judgment stage to find that the defendants were not credible.
 
 
 19
 Fourth, the court correctly refused to take judicial notice of whether the defendants had violated Baylis' rights.
 
 V
 
 20
 We affirm the nondispositive orders and reverse the grant of summary judgment for the defendants and remand the case for trial.
 
 
 21
 AFFIRMED REVERSED AND REMANDED.
 
 RYMER, Circuit Judge, dissenting:
 
 22
 I respectfully dissent from Part III of the majority's memorandum disposition because, in my view, Baylis failed to raise a triable issue of fact that each of the individual prison officials acted with "deliberate indifference." There is no evidence that any of the prison officials knew why Baylis believed he faced a risk of harm and knew of the nature and extent of the harm he believed he faced. Baylis's verified complaint refers only to a desire to avoid "hurting one another"; his affidavit states only that he sought to avoid unspecified "confrontation" and "physical harm"; and his deposition testimony states that he told Connor that he and Belcher "probably weren't going to get along." But such "[s]weeping conclusory allegations will not suffice to prevent summary judgment." Leer v. Murphy, 844 F.2d 628, 634 (9th Cir.1988). Nor do the Miller and Love affidavits help Baylis. At most they suggest that unknown prison "staff" knew of a family relationship between Belcher and Miller; this doesn't raise a triable issue that the defendants knew of such a relationship, or had any reason to believe that Baylis would be attacked by Belcher, or that they acted or failed to act despite knowledge of a substantial risk of serious harm. Even if Baylis's February 22 letter to the warden adequately fleshed out the genesis, nature, and extent of the risk of harm Baylis faced, there is no evidence that Thomas or any other defendant ever received or read it, and Baylis conceded that the letter was returned to him. Because I think that Farmer v. Brennan, 114 S.Ct. 1970 (1994) and Berg v. Kincheloe, 794 F.2d 457 (9th Cir.1986) contemplate more of a showing, I would affirm.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3