**Charles WESLEY, Plaintiff,**

v.

**Gray DAVIS, Linda Clarke, Timothy Friederwitch, M.D., et. al., Defendants.**

**No. CV 01–4310–WJR(RCX).**

United States District Court, C.D. California.

Aug. 24, 2004.

---

Mark Ravis, David Martin, Los Angeles, Counsel for Plaintiff.

Bill Lockyer, Attorney General of the State of California, Marsha S. Marsha, Supervising Deputy Attorney General, Paul C. Epstein, Deputy Attorney General, Elizabeth S. Angres, Deputy Attorney General, Los Angeles, Counsel for Defendants.

## ORDER RE: DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

REA, District Judge.

Having considered the motion, the papers filed in support thereof and in opposition thereto, the oral argument of counsel, and the file in the case, the Court now makes the following decision. Defendants' Motion for Summary Judgment is GRANTED, in part, and DENIED, in part.

## BACKGROUND

Plaintiff Wesley ("Plaintiff") is a recently released state prison inmate who has brought a lawsuit under 42 U.S.C. § 1983 for alleged violations of his Eighth Amendment rights. Plaintiff had a severe, pre-existing back injury that was re-aggravated while doing manual labor in prison. Although he sought prescription and narcotic pain killers from the medical and prison staff, he was only given "over the counter" pain killers. After multiple unsuccessful requests for more potent drugs, Plaintiff filed an appeal within the prison system. The essence of his lawsuit is that as a result of his appeal, Defendants (most of whom are prison officials and medical personnel) committed various corrupt acts, each of which is depicted in greater detail below, in order to derail his appeal or intimidate him into dropping his appeal. Defendants have moved for summary judgment on various grounds.

## DISCUSSION

### I. Legal Standard

Under Rule 56 of the Federal Rules of Civil Procedure, a summary judgment motion should be granted if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R.Civ.P. 56(c).

A fact is material if, under the substantive law governing the case, it "might affect the outcome of the suit." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Further, there is a "genuine" issue over such material fact "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* Factual disputes that are irrelevant or unnecessary under the relevant substantive law will not be considered. *Id.*

The burden of establishing that there is no genuine issue of material fact lies with the moving party. *Mutual Fund Investors v. Putnam Management Co.*, 553 F.2d 620, 624 (9th Cir.1977); *Doff v. Brunswick Corp.*, 372 F.2d 801, 805 (9th Cir.1966), *cert. denied*, 389 U.S. 820, 88 S.Ct. 39, 19 L.Ed.2d 71 (1967). To "defeat" such a burden, and survive a summary judgment motion, the responding party need only present evidence from which a reasonable jury might return a verdict in its favor. *See, e.g., Anderson,* 477 U.S. at 255, 106 S.Ct. 2505. More specifically, the "issue of material fact required by Rule 56(c) to be present to entitle a party to proceed to trial is not required to be resolved conclusively in favor of the party asserting its existence; rather, all that is required is that sufficient evidence supporting the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *Id.* at 248–49, 106 S.Ct. 2505. But the mere existence of a scintilla of evidence in support of the non-moving party's position will be insufficient as there must be evidence on which the jury could reasonably find for the respondent. *Id.* at 252, 106 S.Ct. 2505.

Because summary judgment is based on an inquiry of the facts, and their status as being material and undisputed, a summary judgment motion is appropriate "after adequate time for discovery ... against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which the party will bear the burden of proof at trial." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

Finally, the Court notes that "it is clear enough ... that at the summary

judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249, 106 S.Ct. 2505. In that regard, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 255, 106 S.Ct. 2505 (citing *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158–59, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970)).

## II. Application to the Instant Case

### (A) Personal Involvement

In order to impose liability under section 1983 on an individual defendant, the defendant's act or omission must cause the deprivation of the plaintiff's constitutional rights. The element of causation is "individualized and focus[es] on the duties and responsibilities of each individual defendant whose acts or omissions are alleged to have caused a constitutional deprivation." *Leer v. Murphy*, 844 F.2d 628, 633 (9th Cir.1988). Further, the plaintiff "must establish individual fault . . . as to each individual defendant's deliberate indifference." *Id.* at 634.

When examining the liability of supervisors, "[i]t is clear that the supervisors are not subject to vicarious liability, but are liable only for their own conduct." *Bergquist v. County of Cochise*, 806 F.2d 1364, 1369 (9th Cir.1986); *see also Hansen v. Black*, 885 F.2d 642, 645 (9th Cir.1989) ("supervisory officials are not liable for actions of subordinates on any theory of vicarious liability"); *Hunt v. Dental Dep't*, 865 F.2d 198, 200 (9th Cir.1989) (supervi-

sor is not "vicariously liable for the fault of personnel" at the prison).

In order to establish liability against a supervisor, a plaintiff must allege facts demonstrating (1) his or her personal involvement in the constitutional deprivation, or (2) a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation. *Hansen* at 646. The "sufficient causal connection" may be shown by evidence that the supervisor "implement[ed] a policy so deficient that the policy 'itself is a repudiation of constitutional rights. . . .'" *Id.*, quoting *Thompkins v. Belt*, 828 F.2d 298, 304 (5th Cir.1987). However, an individual's "general responsibility for supervising the operations of a prison is insufficient to establish personal involvement." *Ouzts v. Cummins*, 825 F.2d 1276, 1277 (8th Cir.1987).

Plaintiff does not offer a single piece of evidence implicating, pursuant to the *Hansen* standard, any of the Defendants in the deprivation of his Eighth Amendment rights, with the exception of Dr. Doan, Dr. Meyers and MTA Franklin. There is no evidence whatsoever that any of the other Defendants either (1) were personally involved in the alleged constitutional deprivation or (2) acted in a manner so as to be denominated a "sufficient causal connection" to Plaintiff's alleged constitutional injury. Accordingly, the Court grants Defendants' Motion for Summary Judgment with respect to Plaintiff's claims against every Defendant other than Dr. Doan, Dr. Meyers, and MTA Franklin.[1]

---

1. While Plaintiff's Complaint specifically mentions Dr. Doan and at least establishes Dr. Doan's personal interaction and relationship with Plaintiff, Plaintiff fails to offer any evidence as to how Dr. Doan, with deliberate indifference, partook or contributed to the alleged deprivation of Plaintiff's constitutional rights. Consequently, the Court grants Defendants' Motion for Summary Judgment with respect to Plaintiff's claims against Dr. Doan, as well.

**(B) Remaining Defendants**

■ Plaintiff offers evidence that personally implicates both Dr. Meyers and MTA Franklin in the alleged deprivation of Plaintiff's constitutional rights. Plaintiff's Eighth Amendment "deliberate indifference" claims can be boiled down to four distinct parts: (1) under-treatment of Plaintiff's medical needs, particularly with respect to the failure to prescribe narcotics to Plaintiff to alleviate his pain; (2) undue delay in scheduling the surgery; (3) a corrupt prison appeals system designed to fail; and (4) corrupt and malicious acts by Dr. Meyers and MTA Franklin with respect to Plaintiff's receipt of medical treatment, including threats of under-treatment or non-treatment unless Plaintiff withdrew his 602 Appeal, and shredding of portions of Plaintiff's medical file.

■ The only evidence that supports any of the first three claims is Dr. John S. Videen's letter. Unfortunately for Plaintiff, Defendants' evidentiary objections are not only uncontroverted but also uncontroversial: Dr. Videen's letter is hearsay, not within an exception. It is unsworn, and thus fails to qualify as a declaration. Moreover, the deadline for designating expert witnesses has long since passed; hence, Dr. Videen's prospective opinion testimony will be inadmissible at trial. Dr. Videen's letter is the only "evidence" that Plaintiff has proffered in support of his first three claims, other than Plaintiff's abstract opinion that he was under-treated, unduly delayed, and victimized by a corrupt appeals system.[2] Thus, Defendants' Motion for Summary Judgment with respect to each of Plaintiff's first three claims is granted.

■ The Court, however, denies Defendants' Motion for Summary Judgment with respect to the following narrow portion of Plaintiff's Complaint: Plaintiff's claim against Dr. Meyers and MTA Franklin for the corrupt and malicious treatment of Plaintiff with respect to his receipt (or lack thereof) of medical treatment, specifically in regard to Plaintiff's contentions of threats and document shredding. Plaintiff has established a genuine dispute of material fact on the occurrence of these acts by Meyers and Franklin, as evidenced not only by Plaintiff's own declaration but also by the declaration and deposition testimony of former inmate Marshall. While this evidence in no way tends to prove any of Plaintiff's first three claims, it does go directly to claim four and, in the Court's opinion, creates a genuine dispute of material fact as to (1) whether Meyers and Franklin threatened Plaintiff by willfully delaying or withholding medical treatment in order to compel Plaintiff to drop his 602 appeal and (2) whether Meyers and Franklin, in response to Plaintiff's apparent refusal to drop his 602 appeal, willfully shredded certain of Plaintiff's medical records. A reasonable jury could find that Meyers and Franklin committed these acts.

Defendants contend that even if willful threats and delays took place, or the intentional shredding of medical records occurred, such conduct does not amount to an Eighth Amendment violation unless Plaintiff can demonstrate that his serious pre-existing back injury was actually worsened by the conduct. That is, Plaintiff must show that these acts caused his back injury to escalate in a way that they would not have but for Defendants' acts.

■ The Court rejects Defendants' argument and instead holds that both of these forms of corruption amount to Eighth Amendment violations, regardless of whether Plaintiff's spinal condition demonstrably worsened. The Court will first

---

**2.** These speculations amount to inadmissible opinion testimony.

inspect the intentional and threatening withholding of medical treatment. In *Wood v. Housewright,* 900 F.2d 1332 (9th. Cir.1990), the Court was confronted with the threshold question of whether .the Eighth Amendment requires a showing of serious or .permanent injury as a result of the wrongful withholding of a medical procedure. The majority[3] held that the Eighth Amendment is not only violated if serious. injury results from a wrongful withholding or delay, "but also [in] 'less serious cases, [in which] denial of medical care may result in pain and suffering which no .one suggests would serve any penological. purpose.' *Estelle v. J.W. Gamble,* 429 U.S. 97, 103, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976)." *Id.* at 1340. The majority concluded, "any assertion that [plaintiff] must allege some sort of permanent physical damage is equally untenable." *Id.* Assuming the truth of the allegation that Dr. Meyers and MTA Franklin intentionally withheld and delayed severe or necessary medical treatment or surgery in order to blackmail Plaintiff into dropping his appeal, this sort of conduct would rise to the level of cruel and unusual. Especially considering the documented pinched nerve and herniated disc from which Plaintiff was suffering, the conduct undoubtedly resulted in "pain and suffering which no one suggests would serve any penological purpose." *Id.* That no showing has been made that the spinal condition consequently worsened is entirely insignificant. *Id.* Accordingly, it would amount to a cruel and unusual punishment under the Eighth Amendment.

 The allegation that Meyers and Franklin intentionally shredded documents from Plaintiff's medical file in order to deter Plaintiff from or to punish Plaintiff for continuing with his appeal also qualifies as cruel and unusual punishment, even in the absence of a showing that the shredding lead to a worsening of the medical condition. Firstly, the Court believes that this act would meet the "deliberate indifference" standard, which is applied to serious medical needs, for two independent reasons: (1) shredding an inmate's medical records undercuts the medical personnel's ability to avoid "deliberate indifference" in providing subsequent care, since a doctor can hardly know whether an inmate has a serious medical condition if his medical records ·have been willfully destroyed; and (2) shredding undermines a Court's ability to assess the legitimacy of an inmate's contention that prison officials knew of his serious medical condition, yet behaved deliberately indifferent to it. *See Estelle* at 106, 97 S.Ct. 285. If records from the inmate's medical file have been destroyed, a Court is stripped of its ability to determine accurately whether the "deliberate indifference" standard is met. Thus, by undercutting an inmate's capacity to exercise his Eighth Amendment rights, the shredding of medical records violates the Eighth Amendment.

Moreover, the Court believes that willfully shredding records from an inmate's medical file in order to harass and threaten him violates the Eighth Amendment, even in the absence of a worsened condition, because it amounts to a punishment that transgresses today's "broad and idealistic concepts of dignity, civilized standards, humanity, and decency." *Estelle* at 102, 97 S.Ct. 285; *Hutto v. Finney,* 437

---

**3.** Oddly, the majority *holding* on this threshold issue was written by the dissent, Reinhardt, J. This resulted when Judge Hug, who concurred in Judge Farris' majority *opinion,* disagreed with Judge Farris on this threshold matter and, instead, aligned with Judge Reinhardt. *See id; see also McGuckin v. Dr. Smith,* 974 F.2d 1050 (9th Cir.1992), *reversed on other grounds,* noting the odd alignment in *Wood* and then acknowledging that Judge Reinhardt's determination of the matter "is the rule of our circuit." *Id.* at 1060.

U.S. 678, 686, 98 S.Ct. 2565, 57 L.Ed.2d 522 (1978). Even if the act does not lead to an escalated medical condition, the act, in and of itself, is so wanton, malicious and sadistic that it cannot be sanctioned by our Constitution. The Court believes that intentional and malicious assaults on the dignity and humanity of an inmate, even if not leading to a worsened physical condition, amount to cruel and unusual punishment and must not be tolerated.[4] Thus, for this independent reason, the Court holds that the intentional shredding of an inmate's medical records is unconstitutional.

## CONCLUSION

For the foregoing reasons, the Court GRANTS, in part, and DENIES, in part, Defendants' Motion for Summary Judgment.

It is so ORDERED.

---

4. An example, although an admittedly extreme example, of an intentional and malicious assault on the dignity and humanity of an inmate would be a prison official's decision to urinate on an inmate. While such an indecent and degrading act is almost certain not to lead to a physical injury, the Court believes that it *must* be prohibited by our Constitution.