Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL ESPECIAL

| FRANCHESKA MARIE CAMILO GONZÁLEZ<br><br>Recurrente<br><br>v.<br><br>UNIVERSIDAD DE PUERTO RICO RECINTO DE MAYAGÜEZ Y JUNTA DE GOBIERNO UNIVERSIDAD DE PUERTO RICO<br><br>Recurrido | TA2025RA00266 | ***Revisión Administrativa***<br>Procedente de la Junta de Gobierno Universidad de Puerto Rico<br><br>Sobre: Universidad de Puerto Rico (UPR) |

Panel integrado por su presidenta, la Jueza Grana Martínez, el Juez Adames Soto y la Jueza Romero García

*Grana Martínez*, Jueza Ponente

**Sentencia**

En San Juan, Puerto Rico, 14 de noviembre de 2025.

Comparece ante nos la señora Francheska Marie Camilo González (en adelante, la "Parte Recurrente") por derecho propio, mediante un Recurso de Revisión Judicial instado el 2 de octubre de 2025. En su recurso, nos solicita la revisión de notas y procedimiento académicos, revocación de la suspensión académica y restitución de derechos y título universitarios, entre otros, por parte de la Universidad de Puerto Rico. Por su parte, la Universidad de Puerto Rico y su Junta de Gobierno presentaron su oposición al recurso.

Por los fundamentos que expondremos a continuación se desestima al presente recurso por falta de jurisdicción.

**I**

Aduce la parte recurrente en su escrito que el 14 de agosto de 2025 presentó un recurso apelativo ante la Junta de Gobierno de la Universidad de Puerto Rico (la Junta). Puntualiza que la Junta

contaba con un término que venció el 3 de septiembre del año en curso para responder, sin haberlo hecho. A su entender el silencio de la Junta constituyó una denegación tácita que activó los términos para recurrir ante este foro.

En su recurso la parte recurrente presenta diez señalamientos de error, estos son:

1) La Universidad de Puerto Rico (UPR), a través del Rector del Recinto de Mayagüez, el Presidente y la Junta de Gobierno, erró al no evaluar la nueva evidencia de plagio surgida posteriormente a las resoluciones 90.1153, 50.0661, JG 20-06 y JG 20-07.

2) La UPR erró al no investigar los plagios cometidos por los profesores evaluadores de los cursos INME 6160 e INEL 5208, los cuales fueron determinantes en la suspensión académica del recurrente.

3) La UPR erró al no contestar oportunamente las apelaciones radicadas en las instancias internas correspondientes, incurriendo en silencio administrativo negativo.

4) La UPR erró al validar investigaciones certificadas por el DR. Ubaldo Córdova, quien posteriormente resultó implicado en plagio, lo cual anula a validez de dichas investigaciones.

5) La UPR erró al confundir las solicitudes de nuevas investigaciones de plagio con las ya resueltas en JG 20-06 y 50.0661, dejando sin evaluar múltiples plagios adicionales.

6) La UPR erró al no garantizar un proceso justo de revisión de notas, particularmente en el curso INEL 5208 impartido por el DR. Eduardo Juan, quien además cometió plagio y no entregó evidencia de evaluación, privando al recurrente de su derecho reglamentario a impugnar la calificación.

7) La Junta de Gobierno UPR evaluó de manera incorrecta usando títulos erróneos para evaluar los plagios en previas resoluciones.

8) La Junta de Gobierno de la Universidad de Puerto Rico no le exigió contestación y/o alternativas para solucionar el problema al Presidente de la Universidad de Puerto Rico y al rector del Recinto de Mayagüez de la Universidad de Puerto Rico.

9) La Universidad de Puerto Rico se niega a devolverme mi título universitario en Bioingeniería porque este está vinculado a los plagios cometidos por los profesores de la universidad.

10) La Universidad de Puerto Rico se niega a proporcionar una compensación por los daños y perjuicios que ocasionó la Universidad de Puerto Rico a mi persona pese a que esta posee un seguro que puede ser utilizado para estos propósitos y una lista inmensa de propiedades que le son donadas a la UPR por no ser reclamadas por sus herederos porque desean evadir y encubrir la conducta de sus empleados.

Señala en apoyo de los errores antes transcritos que, conforme a *Pueblo v. Tribunal Superior*, 81 DPR 347 (1959) los organismos administrativos deben considerar nueva evidencia relevante surgida luego de sus determinaciones cuando esta afecta la validez de sus resoluciones. Sin embargo, no expone los hechos específicos que nos permitan evaluar tal argumento. Por otro lado, alega que la falta de respuesta dentro de los plazos reglamentarios constituye una denegatoria tacita que activa la jurisdicción de este tribunal. Y, que conforme a Asociación de *Maestros v. Departamento de Educación*, 178 DPR 253 (2010), la falta de contestación equivale a una contestación adversa. Nuevamente falla en identificar hechos que nos permitan evaluar tal planteamiento.

En cuanto a cierta investigación de plagio que no identifica específicamente asevera que están viciadas por el hecho de que el Dr. Ubaldo Córdova las certificó y el también incurrió en plagio. Para la parte recurrente esto representa un conflicto de interés y falta de imparcialidad administrativa. Enfatiza que conforme *Pueblo v. Tribunal Superior*, 92 DPR 596 (1965) la imparcialidad es un requisito indispensable en los procesos administrativos.

En otro orden de cosas, aduce que fue privada de impugnar las calificaciones de los cursos INME 6160 e INEL 5208 por la falta de entrega de evidencia de los profesores. No especifica a que se refiere con la "falta de evidencia." Así, sostiene que es una violación al derecho reglamentario, sin especificar reglamento y artículo en específico, y además, una violación al derecho constitucional al

debido proceso académico. A su favor expone que en *Diaz v. UPR, 2015* TSPR 89 se reconoce el derecho del estudiante a un proceso justo de revisiones académicas.

En cuanto a sus alegaciones de plagio, abunda que la UPR erró al considerar que las solicitudes de plagio ya habían sido resueltas anteriormente cuando son nuevas solicitudes. Esto pues, utilizó títulos incorrectos privándole de un proceso confiable y justo violando su debido proceso de ley. Para la recurrente, la Junta de Gobierno erró al no requerir contestación ni alternativas de solución al presidente de la UPR ni al rector del Recinto de Mayagüez lo que representó una omisión de su deber de supervisión y adjudicación plena de las reclamaciones presentadas.

En cuanto a la alegada retención indebida de su título universitario afirma que constituye una violación al derecho adquirido de propiedad protegido por la Constitución de Puerto Rico. Arguye que una vez completados los requisitos académicos, el estudiante tiene un derecho adquirido a su grado universitario, el cual no puede condicionarse a controversias administrativas relacionadas con la conducta de terceros, en este caso de profesores. A su entender la actuación de la UPR representa un ejercicio arbitrio del poder administrativo, contrario al principio de razonabilidad establecido en la LPAU y la doctrina del debido proceso de ley. Enfatiza que, en *Montalvo v. Universidad de Puerto Rico*, 2021 TSPR ___ se reconoció el derecho de los estudiantes a la protección de sus credenciales académicas frente a actuaciones arbitrarias y, en *Pérez v. UPR*, 143 DPR 65 (1997) se recalcó que la institución universitaria debe actuar conforme a la buena fe y respeto de los derechos adquiridos de los estudiantes.

Por último, sostiene que la UPR se equivocó al negarse a compensarle por los daños sufridos pese a que cuenta con seguros institucionales y patrimonio disponible para tales fines. Afirma que,

conforme a *Ramos v. Universidad de Puerto Rico,* 100 DPR 786 (1972) la institución educativa puede ser demandada por daños ocasionados por sus empleados en el desempeño de sus funciones oficiales.   En fin, para la recurrente la negativa a compensarle teniendo mecanismos financieros refleja un intento de evadir responsabilidad que infringe el principio de buena administración pública.

El Tribunal de Apelaciones cumplirá el propósito de proveer a los ciudadanos de un foro apelativo mediante el cual un panel de no menos de tres (3) jueces revisará, como cuestión de derecho, las decisiones finales de los organismos y agencias administrativas. La revisión como cuestión de derecho de las decisiones finales de los organismos y agencias administrativas se tramitará de conformidad con las disposiciones de la Ley de Procedimiento Administrativo Uniforme del Gobierno de Puerto Rico. 4 LPRA sec. 24 u. Es decir, mediante recurso de revisión judicial, que se acogerá como cuestión de derecho, el Tribunal de Apelaciones revisará las decisiones, órdenes y resoluciones finales de organismos o agencias administrativas. 4 LPRA sec. 24y (c).

Para viabilizar la consecución de tales fines el Tribunal Supremo adopto mediante el Reglamento del Tribunal de Apelaciones las reglas internas que rigen los procedimientos del Tribunal de Apelaciones.[1]   En lo pertinente la Regla 59 del Reglamento dispone que en el escrito de revisión administrativa contendrá, entre otros:

…

(b) Las citas de las disposiciones legales que establecen la jurisdicción y la competencia del tribunal,

(c) Una referencia a la decisión, reglamento o providencia administrativa objeto del recurso de revisión, la cual incluirá el nombre y el número del caso

---

[1] *In re Aprob Enmdas.,* Reglamento TA, 2025 TSPR 42, 215 DPR ___ (2025).

administrativo, el organismo o la agencia o funcionario o funcionaria que la dictó, la Región Judicial correspondiente, la fecha en que fue dictada y la fecha en que se archivó en autos copia de su notificación a las partes. También, una referencia a cualquier moción, resolución u orden mediante las cuales se haya interrumpido y reanudado el término para presentar el recurso de revisión …

(d) Una relación fiel y concisa de los hechos procesales y de los hechos importantes y pertinentes del caso.
(e) Un señalamiento breve y conciso de los errores que a juicio de la parte recurrente cometió el organismo, agencia o funcionario recurrido o funcionaria recurrida.

(f) Una discusión de los errores señalados, incluyendo las disposiciones de ley y la jurisprudencia aplicables.

…[2]

Estos requisitos no responden a un capricho de este foro sino a la realidad de que el foro apelativo revisa las conclusiones de derecho no en abstracción a los hechos, todo lo contrario, sino en función a ellos.  Por eso, resulta palmario que la parte que acude a este foro ponga en posición al juzgador de conocer no solo las citas jurídicas de la normativa que aplica a su postura sino los hechos que sostienen la misma. Y es que los asuntos mencionados de manera superficial, sin acompañarse de algún esfuerzo por desarrollar un argumento, se consideran renunciados. *U.S. v. Zannino,* 895 F.2d 1, 17 (1er Cir. 1990); *Brown v. Trustees of Boston Univ.,* 891 F.2d 337,353 (1st Cir. 1989); *Lee v. Murphy,* 844 F.2d 628, 634 (Oth Cir. 1988). "No basta con mencionar un posible argumento de la manera más esquemática, dejando que el tribunal haga el trabajo del abogado, cree la estructura del argumento y le dé cuerpo. Como dijimos recientemente en un contexto estrechamente análogo: "No se espera que los jueces sean adivinos. En consecuencia, un litigante tiene la obligación de 'exponer sus argumentos de manera clara y directa', o de lo contrario permanecer

---

[2] *Id.*

en silencio para siempre.'"" *U.S. v. Zannino, supra.* (Traducción nuestra).

**III**

El 12 de mayo de 2025, la Parte Recurrente presentó un escrito titulado "Apelación Rector UPRM". [3] Del correo electrónico enviado se desprende que "se incluye nuevos casos de plagio para que sean investigados por el Rector de la Universidad de Puerto Rico Recinto de Mayagüez".[4]

El 9 de junio de 2025, el Dr. Agustín Rullán Toro (en adelante, "Rector") en su determinación expone que:

[...] el suscribiente como rector de la UPR- Mayagüez carece de jurisdicción para atender los planteamientos esbozados en su Apelación. De otro parte, los asuntos según expuestos en su escrito constituyen cosa juzgada pues fueron investigados y adjudicados previamente en los casos: presidente #50.0661, Junta de Gobierno- Apelación Administrativa: JG20-07 y Tribunal Apelativo: KLRA202100418.[5]

Posteriormente, la Parte Recurrente solicitó una Reconsideración.[6] Del Apéndice no se desprende si la Reconsideración fue acogida o no o si hubo una determinación por parte del Rector. El 8 de julio de 2025, la Parte Recurrida acudió mediante apelación a la presidenta de la Universidad de Puerto Rico la Dra. Zayira Jordán Conde. [7] Del apéndice no se desprende cual es la determinación que brinda la presidenta de la Universidad de Puerto Rico. Pero, se asume que no fue una favorable debido a que la Parte Recurrente acude en apelación a la Junta de Gobierno de la Universidad de Puerto Rico, el 14 de agosto de 2025.

---

[3] Véase Apéndice en la pág. 41 y 43. La Parte Recurrente solo se limita a la presentación del envío del correo electrónico y no del contenido del escrito.
[4] Véase Anejo 14 del Apéndice.
[5] Véase Anejo 12 del Apéndice.
[6] *Íd.* en la pág. 44. La fecha de la solicitud de la reconsideración no es legible.
[7] *Íd.* en la pág. 47.

En la apelación ante la Junta de Gobierno la Parte Recurrente expone que han surgido nuevos casos de plagio por parte de profesores del Departamento de Bioingeniería en torno a sus diseños y que no han sido investigados por las autoridades universitarias.[8] Asimismo, alego que la universidad tenía que investigar las notas obtenidas en los cursos debido a que están vinculados a la suspensión académica y al plagio.[9]  Según la Parte Recurrente la Junta de Gobierno no presentó su determinación al escrito de apelación.[10]

El 2 de octubre de 2025, la Parte Recurrente presentó un Recurso de Revisión Judicial ante el Tribunal de Apelaciones debido a que consideró una "denegación tácita" el que la Junta de Gobierno de la Universidad de Puerto Rico no contestara la apelación ante ese foro. No obstante, no se desprende de dicho recurso cual es la decisión que este foro apelativo debe revisar.  Sin embargo, la Parte Recurrente presenta de una manera muy esquemática los señalamientos de error antes señalados.

Por su parte, la Universidad de Puerto Rico y su Junta de Gobierno comparecieron ante este foro mediante una solicitud de desestimación.  Sostiene que el recurso es prematuro toda vez que el Reglamento Número 6479 dispone en su Sección 13.6 que la Junta de Gobierno entenderá en las apelaciones que se interpusieren contra las decisiones del Presidente de la Universidad o contra las resoluciones de la Junta Universitaria, y las decisiones de la Junta de Apelaciones del Personal No Docente en el Sistema Universitario, de la Junta de Retiro y de las Junta de Apelaciones del Plan de Clasificación del Personal Exento No Docente.  Por otro lado, el Reglamento Numero 9054 Reglamento sobre Procedimientos

---

[8] *Íd.* en la pág. 52.
[9] *Íd.* en la pág. 53.
[10] Véase Recurso de Revisión Judicial en la pág. 4.

Apelativos Administrativos de la Universidad de Puerto Rico del 23 de octubre de 2018 reitera que las apelaciones sobre las decisiones de la Junta de Retiro deberán ser presentadas ante la Junta de Gobierno de la UPR. Además, establece un término de seis (6) meses para que una apelación sea resuelta, salvo en circunstancias excepcionales. Puntualizan que conforme la reglamentación antes aludida la recurrente no esperó a que culminaran los procesos ante la Junta de Gobierno de la UPR, o sea, no agotó los remedios administrativos. Así, argumentan que conforme al Artículo 8(B) del Reglamento Núm. 9054, la Junta de Gobierno de la UPR tiene un término directivo de seis (6) meses para resolver la apelación, término que, por admisión de la parte recurrente, no ha vencido. Por tanto, al presente es la Junta de Gobierno de la UPR el foro con jurisdicción para atender el reclamo de la recurrente.

A. Jurisdicción

La jurisdicción ha sido definida como el poder o autoridad que tienen los tribunales para resolver los casos y controversias.[11] La jurisdicción no se presume y los tribunales no tienen discreción para asumirla donde no la hay.[12] Los tribunales tienen el deber de examinar su propia jurisdicción como la del foro de donde se apela una determinación.[13] Asimismo, se ha expuesto que los tribunales tienen que ser celosos guardianes de su jurisdicción debido a que los asuntos relacionados con estas son privilegiadas.[14] Cuando se cuestiona la jurisdicción por alguna de las partes o cuando no ha sido planteada por estas, el tribunal debe evaluar y examinar con rigurosidad el asunto jurisdiccional, dado que este incide en el poder de adjudicar una controversia.[15]

---

[11] Rodríguez v. De León, 191 DPR 700, 708 (2014).
[12] Maldonado v. Junta de Planificación, 171 DPR 46, 55 (2007).
[13] Torres v. Madera, 202 DPR 495, 500 (2019).
[14] Ruiz v. Trafon Group, Inc. 200 DPR 254, 268 (2018).
[15] *Íd.*

El Tribunal Supremo ha expuesto que la falta de jurisdicción ocasiona las siguientes consecuencias:

> (1) No es susceptible de ser subsanada; (2) las partes no pueden voluntariamente conferírsela a un tribunal como tampoco este puede arrogársela; (3) conlleva la nulidad de los dictámenes emitidos; (4) impone a los tribunales el ineludible deber de auscultar su propia jurisdicción; (5) impone a los tribunales apelativos el deber de examinar la jurisdicción del foro de donde procede el recurso, y (6) puede presentarse en cualquier etapa del procedimiento, a instancia de las partes o por el tribunal *motu proprio* [por su propia iniciativa].[16]

Si el tribunal entiende que no tiene jurisdicción para atender un caso corresponde declararlo y desestimarlo sin entrar en los méritos de la controversia.[17]

Un recurso es prematuro cuando se presenta un alegato ante un Tribunal Apelativo sin que este tenga jurisdicción.[18] Asimismo, un recurso prematuro priva de jurisdicción al tribunal al cual se recurre. [19]

El art. 9 del Reglamento para Apelaciones de la Universidad para Puerto Rico (en adelante, el "Reglamento") establece la jurisdicción de las autoridades apelativas. El inciso (A) del mencionado artículo manifiesta que una apelación ante el Rector podrá ser llevada a cabo cuando haya una *decisión adversa* por "los decanos o cualquier otro funcionario que en el desempeño de sus funciones le responda directamente a éste". [20]

C. Conocimiento Judicial.

El conocimiento judicial es un medio de prueba.[21] Dicho concepto "trata de establecer un hecho como cierto sin la necesidad formal de presentar evidencia".[22] Esta figura está regulada por las Reglas de Evidencia el cual establece que se podrá tomar

---

[16] MCS Advantage, Inc., v. Fossas, 211 DPR 135, 146 (2023).
[17] *Íd.*
[18] Torres v. Torres, 175 DPR 83, 97 (2008).
[19] *Íd.*
[20] Reglamento para Apelaciones de la Universidad de Puerto Rico, Reglamento Núm.9054, Departamento de Estado, 23 de octubre de 2018, pág. 10.
[21] UPR v. Laborde, 180 DPR 253, 277 (2010).
[22] *Íd.*

conocimiento judicial en la etapa apelativa.[23] Asimismo, exponen que el Tribunal podrá tomar conocimiento judicial a iniciativa propia o a solicitud de parte.[24]

La Regla 201 (B) de Evidencia expresa que "[e]l tribunal podrá tomar conocimiento judicial solamente de aquel hecho adjudicativo que no esté sujeto a controversia razonable porque: (1) es de conocimiento general dentro de la jurisdicción territorial del Tribunal, o (2) es susceptible de corroboración inmediata y exacta mediante fuentes cuya exactitud no puede ser razonablemente cuestionada".[25] El tratadista Ernesto Chiesa Aponte señala que en el inciso dos (2) se puede tomar conocimiento judicial de sentencias o resoluciones que disponen del caso debido a que son hechos cuya comprobación puede realizarse de forma exacta e inmediata.[26]

Primeramente, tomamos conocimiento judicial de tres (3) sentencias emitidas por paneles hermanos del Tribunal de Apelaciones en donde la Parte Recurrente ha querido litigar infructuosamente errores iguales al caso de marras. El 21 de septiembre de 2021, mediante la sentencia en el caso KLRA202100418 se desestimó su recurso debido a que no se presentó el apéndice en el término concedido, además, de no identificar la resolución administrativa de la cual recurría, entre otras cosas. El segundo caso se dictó sentencia el 5 de noviembre de 2021, mediante la sentencia KLRA202100542 en dicha sentencia se desestimó el recurso por incumplimiento craso con el Reglamento del Tribunal de Apelaciones. Por último, el tercer caso se emitió el 13 de octubre de 2022, mediante la sentencia KLRA202200288 el cual se le desestimó por falta de jurisdicción debido a que la Parte Recurrente no puso a disposición del Tribunal de Apelaciones una

---

[23] 32 LPRA Ap. V, regla 201 (E).
[24] 32 LPRA Ap. VI regla 201 (C).
[25] 32 LPRA Ap. VI, regla 201(B).
[26] E.L. Chiesa Aponte, Reglas de Evidencias Comentadas, 2ª. ed. rev. San Juan, Ed. SITUM, 2024, pág. 38.

orden o resolución final que le permita asumir jurisdicción sobre la controversia.

En el caso de marras la Parte Recurrente tampoco pone a disposición de este Tribunal una resolución por parte de la Junta de Gobierno el cual tenga una determinación adversa y le permita acudir dentro del plazo establecido en el Reglamento del Tribunal de Apelaciones. Por consiguiente, este foro no puede tan siquiera evaluar si ostenta jurisdicción. Sin embargo, aunque se alega que no hay una determinación por parte de la Junta de Gobierno se le hace un señalamiento de error al no evaluar los nuevos casos de plagio. Cabe destacar, que del apéndice no surge ninguna determinación adversa por parte de los distintos foros con jurisdicción apelativa de la Universidad de Puerto Rico a excepción de la determinación del Rector.

Con los escasos argumentos, y la ausencia total de una descripción de hechos no es posible, una vez más, para este foro apelativo entender ni el estado procesal de sus argumentos ante la Junta mucho menos ante este foro. Como tampoco nos ha puesto en posición de comprender sus señalamientos de errores incluyendo una discusión de los errores que ha señalado junto a las disposiciones de ley, jurisprudencia aplicable y los hechos procesales e importantes que sustentan su posición.

No podemos hacer el trabajo de la parte que recurre ante este foro, concibiendo argumentos que no han sido presentados, solo nos corresponde juzgar. Son las partes quienes tienen que ponernos en condiciones de primeramente evaluar nuestra jurisdicción para en segundo término atender sus planteamientos sustantivamente. Eso no ocurrió.

**IV**

Por los fundamentos antes expuestos, desestimamos el recurso presentado por falta de jurisdicción ante el incumplimiento

craso con las disposiciones reglamentarias que nos permiten ejercer

nuestra jurisdicción.

Lo acordó y manda el Tribunal, y lo certifica la Secretaria del

Tribunal.


Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones